(No. 19204.—

FRANCES EVELYN SMITH, Defendant in Error, *vs.* CARL E. SMITH, Plaintiff in Error.

*Opinion filed April 20, 1929.*

EGBERT ROBERTSON, (CHURCH, HAFT, ROBERTSON & CROWE, of counsel,) for plaintiff in error.

ROY C. WOODS, and JOHN H. BISHOP, (ROY S. GAS-KILL, of counsel,) for defendant in error.

Mr. COMMISSIONER CROW reported this opinion:

On October 3, 1922, Frances E. Smith obtained a decree for divorce from her husband, Carl E. Smith, in the superior court of Cook county on the ground of desertion. There were no children, and a decree was entered by agreement and consent of the parties adjusting their property rights. After the decretal order dissolving the bonds of matrimony the decree provides, in substance, that it appears to the court, and the court so finds, from the admissions of the parties in open court and from the testimony, that subsequent to the determination of the court to enter such decree of divorce the complainant and defendant reached an agreement regarding the question of alimony and the adjustment of property rights between them;

that, with the consent of the parties given in open court, it is further decreed that the defendant, Carl E. Smith, upon the entry of this decree forthwith pay to the complainant the sum of $3000 in cash, and at the same time, upon the entry of this decree, shall assign, transfer, convey and deliver to complainant a certain first mortgage for $6500 on the premises known as No. 6002 Kenmore avenue, in the city of Chicago, and that the defendant shall pay to the complainant, as and for solicitor's fees in this case, the sum of $1500 upon the entry of the decree; that the defendant pay to the complainant the sum of $250 on the entry of the decree, and commencing on November 11, 1922, and thereafter on the eleventh day of each and every month, pay to the complainant, as and for alimony, the sum of $250 per month as long as the complainant lives and remains unmarried; that, with the consent of the parties aforesaid, to secure the payment each month of said sum the defendant shall assign, transfer and deliver a certificate or certificates for fifty shares of the capital stock of some corporation to be agreed upon by the parties, to some corporation trustee, to be held by said corporation in trust for the purpose of securing the prompt payment of said sum each month to the complainant by the defendant. Said trustee shall hold said stock as long as the complainant shall live and be unmarried, except as herein provided. In the event of her death or re-marriage before the death of the defendant the stock shall be by said trustee assigned, transferred and delivered to him. In the event of his death before her death, she not having re-married subsequent to the entry of this decree, the stock shall be assigned, transferred and delivered to her, to be hers absolutely, in lieu of the monthly payments of alimony which would accrue if he were living; that he shall be entitled to the dividends on said stock, provided that at the time of the payment of the same the stock had not before then been transferred to the complainant, as provided ·herein in case of default.

The defendant shall have the privilege at any time to terminate the trust and have the stock re-delivered to him upon paying to the complainant the sum of $35,000 in cash in addition to any alimony due and unpaid, and in that event the monthly alimony provided for herein shall cease. In the event that the defendant shall be in default in the payment of any installment or installments of alimony, or any part thereof, and such default shall continue for thirty days after written notice thereof given by the trustee to him by mail addressed to his last known address, then the complainant shall have the option of terminating this trust, and upon her election so to do the trust shall terminate and all of the shares of stock shall by the trustee be assigned, transferred and delivered to her and be received by her in lieu of alimony accruing or becoming due subsequent to the transfer of said stock, at which time the monthly installment of alimony shall cease; and until the complainant shall elect to exercise her option to terminate the trust, as above provided, the defendant shall continue to pay to the complainant the monthly installment of alimony as in the decree provided. With the consent of the parties the provisions made for alimony to the complainant are in full settlement and adjustment of all the property rights between the parties and all claims of every kind, either for or on account of any property of either which during the marriage relation reached the hands of the other, and that the same is also in lieu of all dower, which is hereby released, of the complainant in the real estate of the defendant and in any distributive share which she might have in his estate, and the decree shall operate as a release of any marital rights of every kind on the part of the complainant in and to the property of any and every kind that the defendant now has or may hereafter acquire, except as herein provided.

Mrs. Smith testified, *inter alia:* "In the event that the court grants me a decree we have settled our property rights.

He is to give me $3000 in cash, a $6500 mortgage on the property at 6002 Kenmore avenue and $250 a month alimony, the first payment on the entry of the decree, the next payment on the next 11th, and each ensuing month. That alimony is to be secured by fifty shares of stock to be put in escrow. Mr. Smith is to draw the dividend on them if the alimony is paid up, and if I die or re-marry the stock is to go to Mr. Smith. If he dies before me it is to be delivered to me as my own property. The furniture that I have in my possession is to be mine, and bills that accrue to the entering of the decree are to be paid by Mr. Smith, and he is to pay storage on furs and furniture up to December 17."

On July 21, 1926, Mrs. Smith filed a petition in the superior court for a modification of the decree. It was filed as of the number of the original case in equity, reciting the filing of the bill and the entry of the decree for divorce on October 3, 1922, setting out the decree for divorce and settlement of property rights, and averring that it was in full settlement of property rights of the parties to the suit. The petition set out *in extenso* the trust agreement with the Northern Trust Company, and averred:

"Upon the execution of said decree complainant and defendant executed a collateral trust agreement with the Northern Trust Company of Chicago, Illinois, in contemplation of performing and fulfilling the terms of said decree, which agreement is as follows:

" 'The Northern Trust Company, Chicago, Illinois:

" 'GENTLEMEN—We beg to hand you herewith certificate No. 113 for fifty shares of the capital stock of the W. W. Kimball Company, of the par value of $100 per share, owned by Carl E. Smith, one of the undersigned, but issued to him under the name of E. C. Smith, and by him endorsed in blank, which said certificate is transferred and delivered to you, as trustee, to secure the proper and full payment by the said Carl E. Smith to Frances E. Smith, as long as she lives and remains unmarried, of the sum of $250 each month as and for alimony, as provided for in a certain decree of

divorce entered in the superior court of Cook county the second day of October, 1922, a copy of which decree is hereto attached and made a part hereof. You are hereby authorized and directed to hold the said certificate of stock for the purposes of this trust, and in the event of any default in the payment of any installment or installments of alimony, or any part hereof, as provided for in the said decree, and such default shall continue for thirty days after written notice from said Frances E. Smith to you, and by you given to the said Carl E. Smith by mail addressed to his last known address, then the said Frances E. Smith shall have the option of terminating this trust, and upon her election so to do the said trust shall terminate and all of the said shares of stock shall by you, as said trustee, be assigned, transferred and delivered to the said Frances E. Smith and be received by her in lieu of all alimony accruing or becoming due subsequent to the transfer of said stock, at which time the monthly installment of alimony as herein and in said decree provided shall cease; and until the said Frances E. Smith shall elect to exercise her option to terminate the trust as above provided, the said Carl E. Smith shall continue to pay to her the monthly installment of alimony as in said decree provided. In the event of the death of said Carl E. Smith, leaving him surviving said Frances E. Smith, she not having married since the entry of said decree, then and in that event you are authorized and directed to assign, transfer and deliver to the said Frances E. Smith all of said stock as shall be then held by you as trustee, to be hers absolutely, in lieu of the monthly payments of alimony that the said Frances would have received if the said Carl were living, and the said trust shall then terminate. You are hereby authorized and directed, in the event of the death of said Frances E. Smith or her re-marriage, to assign, transfer and deliver said stock to the said Carl E. Smith. It is expressly provided and agreed between the parties that the said Carl E. Smith shall have the right and privilege at any time to terminate said trust and have the said stock assigned, transferred and delivered to him, upon his paying to the said Frances E. Smith the sum of $35,000 in cash, in addition to any alimony due and unpaid.' " * * *

The petition to have the decree opened avers that in accordance with the trust agreement the defendant deposited fifty shares of stock; that at the time of the deposit the fifty shares had a book value of upwards of $700 per share, and upon information and belief the market value of said stock was upwards of $700 per share; that subsequent to the deposit of the fifty shares the Kimball Company has

been re-capitalized and it increased its capital stock and issued a stock dividend of approximately 100 per cent, and because thereof the book and market values of the deposited fifty shares have become decreased and lessened and are of the value of not more than $230 per share; that the market value does not exceed $230 per share and the book value does not exceed $345 per share; that because of such decrease in the value of the capital stock the value of said fifty shares has become lessened and decreased, so that instead of the value being $35,000, as was contemplated by the complainant and the defendant at the time of the execution of the trust agreement and the deposit of said shares, their value does not exceed $10,000 and is not sufficient security for the payment of alimony; that prior to the entry of the decree the defendant personally, through agents, conferred with the petitioner and her representative with respect to a possible settlement, and that negotiations were had and an agreement reached, being substantially as set forth in the decree; that at the time of the negotiations the defendant represented to the petitioner that he owned but fifty shares of stock of the Kimball Company and no more and that he owned the mortgage referred to in the decree; that he had practically no more cash and could obtain no more cash than about the sum of $5000; that his salary as an official of the Kimball Company was insufficient to pay his obligations; that he had no other property or assets, was insolvent, heavily in debt and on the verge of bankruptcy; that said representations were false and untrue and the defendant knew them to be false and untrue, and that the same were made to deceive and defraud the petitioner and induce her to make a property settlement less than she otherwise would if she had known the true facts as to the financial condition of the defendant and of his property; that the representations were made with the intention that they should be acted upon and the petitioner deceived thereby, and that she was deceived thereby and induced to enter

into the agreement for the settlement of property rights and alimony, and to accept, and did accept, a much smaller sum of alimony per month and a much smaller settlement of her rights and interest in the property of the defendant than she otherwise would, and that she was thereby defrauded of what was due her and was damaged thereby. These averments are followed by charges of fraud in procuring the consent decree and as to the holdings by Smith of property, stock and securities in the Kimball Company and other companies; that during the negotiations with regard to the decree the defendant had a large income, consisting of salary and commissions from the Kimball Company, amounting to $15,000 per annum, which he concealed from her; that before the decree he concealed his securities, bonds and other assets under a false name and in a safe deposit box other than his usual deposit box, so the petitioner might know nothing about where they were located or the amount thereof; that the petitioner did not discover the fraud until about May 12, 1926, and that she had always relied upon his representations as true. The petition concludes with a prayer for injunction, without notice, restraining the respondent from handling, managing, selling or assigning the several stocks, bonds and securities owned by him in safe deposit boxes owned by him, and that said depositaries be enjoined from allowing him to have or handle said securities or entering into the vaults or safe deposit boxes where the securities are kept. The injunction was ordered to issue without notice and without bond.

Respondent filed an answer to the petition, denying specifically most of the charges, including all charges of fraud, and concluded by making the answer a demurrer to the petition, and averring that if the averments of the petition are true they are wholly insufficient to entitle the petitioner to any relief in this proceeding. It denied that the court had jurisdiction to modify the decree on the ground of fraud or misrepresentation.

Upon evidence heard by the chancellor a decree was entered modifying the original consent decree. It provided that the order of the original decree be modified, changing the monthly payments to the petitioner from $250 to $400; that Smith transfer forthwith and deliver to the Northern Trust Company, as trustee, certificates endorsed in blank evidencing fifty-three shares of the capital stock of the Kimball Company, of the par value of $100 per share, being the stock dividend declared by the Kimball Company since October 3, 1922, on certificate 113 for fifty shares placed in trust to secure the payment of alimony under the decree, the fifty-three shares to be held on the same terms and conditions as the fifty shares, and Smith was enjoined from selling or disposing of said shares, except to deposit them with the Northern Trust Company under the trust agreement. From the decree Smith prosecuted an appeal to the Appellate Court for the First District, which affirmed the decree of the superior court. To review that judgment this court granted *certiorari*.

The decree for support and maintenance was a consent decree, and as such must be regarded as a contract between the parties to the suit. (*Adams* v. *Storey,* 135 Ill. 448.) While husband and wife may not enter into an agreement for divorce, yet the amount of alimony the husband shall pay to the wife, the terms of the payment and the length of time payment is to be made may be arranged between them by consent. When they agree upon alimony the court will embody the agreement in its decree, and it will thereafter conclude the parties. (*Storey* v. *Storey,* 125 Ill. 608.) The consent decree did not affect the question of divorce, which is beyond the power of the parties to adjust by agreement or collusion. As a contract it is binding on the parties unless induced by fraud. If so, it must, like any other contract, be attacked by some method recognized by courts of equity for relief from fraud. Defendant in error has proceeded by petition under section 18 of the Divorce act.

So far as material that section provides: "When a divorce shall be decreed the court may make such order touching the alimony and maintenance of the wife * * * as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just; * * * and the court may, on application from time to time, make such alterations in the allowance of alimony and maintenance * * * as shall appear reasonable and proper."

It was stipulated, as the petition avers, that the provisions made by the parties were in full settlement and adjustment of the property rights of the parties, and that the stipulated decree shall operate as a release of the marital rights, of every kind, on the part of the complainant in and to the property, of any and every kind, that the defendant had at the time of the decree or might thereafter acquire. By the stipulation the complainant received $3000 in cash and a first mortgage on premises in Chicago for $6500, in addition to the monthly payments of $250 so long as she lives and remains unmarried, secured by the deposit of the shares of stock to be held under the trust agreement for that purpose. It is presumed, and from the negotiations it is clear, the defendant would not have parted with the items composing the settlement if as compensation he was not assured that the gross payment and the trust agreement were in full settlement of all claims on her part for alimony. The parties did not rely upon the equity powers of the court for the adjustment of their marital rights so far as property was concerned. They did what they had a legal right to do—adjusted those rights by mutual agreement. Like any other agreement upon full consideration, the parties are concluded by it in the absence of fraud, and that question is not open for consideration in this proceeding.

Courts of equity have no inherent powers in cases of divorce. The jurisdiction of courts of equity to hear and determine divorce cases, and all matters relating thereto, is conferred only by statute. While such courts may ex-

ercise their powers within the limits of the jurisdiction conferred by the statute, the jurisdiction depends upon the grant of the statute and not upon general equity powers. (*Smith* v. *Johnson*, 321 Ill. 134.) Section 18 of the Divorce act does not enlarge the general equity powers of the court. It reserves a limited power to review alimony decrees. Being in the nature of a special power it will not be extended beyond its terms. It only authorizes the court to make such "alterations" in the allowance of alimony "as shall appear reasonable and proper." Those authorized alterations relate only to the allowances provided for by the preceding clause of the section authorizing the court to make the allowance. Reasonableness and propriety of the alteration depend on circumstances. The amount is not the only determining feature justifying it. The parties are in a court of equity, and the right to invoke its aid is governed by equitable principles. The principle applies no less to the adjustment or re-adjustment of alimony than to any other subject. It was competent for the parties to agree upon the allowance. Shares of valuable corporate stock were placed in trust to guarantee the payments and at the death of Smith were to become the property of Mrs. Smith. He was under no obligation to make provision for her support and maintenance after his death, if she survived him. But that arrangement was an integral part of the adjustment of their property rights, in addition to securities of the value of nearly $10,000, and the interest thereon, and monthly payments of $250. If she desires and is entitled to relief from the consent decree as to alimony, the application by petition is not the method to procure it.

But defendant in error contends that the Kimball stock placed in trust as security for the payment of the alimony allowances has been depleted as security and as her agreed patrimony after Smith's death, if she survives him, by reason of stock dividends declared on the shares held in trust. Whether that is true as matter of law we are not now re-

quired to consider. She was represented by competent and experienced counsel. After deliberation, conferences, investigation of Smith's financial affairs and discussion extending over a period of nearly two and a half years, the agreement was deliberately entered into by the parties upon the advice of counsel and was recorded as the final arrangement justifying her in accepting it as a proper settlement of property rights and taking a divorce on the ground of desertion. She was pressing for the settlement of the alimony by agreement. In a formal letter to her husband while the negotiations were pending she told him that if he did not arrange the alimony she would file a bill for separate maintenance. The agreement is emphasized in each paragraph of the decree relating to the settlement. That the recitals are true is evidenced by her testimony as well as by the recitals in the trust agreement signed by her, of which the decree was made a part. The negotiations preceding and leading to the settlement show that it was a deliberate, well-advised adjustment of a matter within the competence of the parties to make by contract, and, like any other contract deliberately and understandingly entered into, is the law of the parties with respect to its subject matter. When, if ever, the time arrives to determine the extent of Mrs. Smith's property rights in stock dividends under the trust agreement, discussed by counsel, the question may be presented to a competent tribunal for determination in which all parties to the agreement may be heard. The trustee, as well as the parties interested in the trust, is a necessary party to the adjustment, but a court of equity, in the exercise of the special statutory jurisdiction now invoked, is not clothed with that power.

Under the limited power conferred on the court by section 18 of the Divorce act the court had no jurisdiction to require plaintiff in error to deposit stock in addition to that agreed upon and provided in the decree. The limit of its jurisdiction is to "make such alterations in the allowance

of alimony * * * as shall appear reasonable and just." The order of the court under review was not within the terms of the section authorizing the court to make alterations in the allowance of alimony. As well contended by plaintiff in error, there was no agreement of the parties requiring the maintenance of fixed value of stock deposited as security. The parties stipulated without conditions on that subject. The court could not substitute its notion of security for that definitely agreed upon by the parties and adopted by the court in its decree. It had no jurisdiction in this proceeding to require additional security for the payment of the alimony. It might be necessary to examine the decree upon different principles if the proceeding commenced by defendant in error were by some appropriate method of attack on the ground of fraud.

It is the settled construction of section 18 that it authorizes the change of a decree for alimony based only upon a changed condition or betterment of property qualifications after the decree to meet additional needs of one entitled to alimony arising after the decree. This is the only ground justifying or authorizing a re-adjustment of alimony by supplemental decree. (*Cole* v. *Cole,* 142 Ill. 19; *Herrick* v. *Herrick,* 319 id. 146.) The criterion is not whether the decree was right when entered, because all presumptions are in its favor, but the question is, Has the necessity of the petitioner changed since the rendition of the decree, and has the ability of the husband to contribute to it also changed? (*Craig* v. *Craig,* 163 Ill. 176.) The first decree is *res judicata* as to previous conditions authorizing alimony in the decree. (*Cole* v. *Cole, supra.*) The petition, which is the basis for relief, does not aver any fact showing an increased ability since the rendition of the decree to contribute to petitioner's increased needs, if there are any. It is not enough that she is dissatisfied with the former decree or that in the respect of allowance it may have been erroneous. (*Craig* v. *Craig, supra.*) In the

*Craig case* this court specifically denied the right of inquiry into the original decree upon an application of the kind now at bar. Indeed, the terms of the statute limit the inquiry to her needs, and his increased ability to supply them, arising after the decree.

Charges of fraud made in the petition with respect to the procurement of the voluntary settlement are not subject to review in this proceeding.

The decree of the superior court and the judgment of the Appellate Court are reversed and the cause is remanded to the superior court, with directions to dismiss the petition.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*