Elsie Pokorney, Appellant, v. William Pokorney, Appellee.

Gen. No. 45,713.

Opinion filed November 19, 1952. Released for publication December 5, 1952.

HAROLD A. PINKERT, and G. A. BOSOMBURG, both of Chicago, for appellant; G. A. BOSOMBURG, of Chicago, of counsel.

MAURICE S. WEINZELBAUM, and NATHAN M. GOMBERG, both of Chicago, for appellee; IRVING GOODMAN, of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff appeals from an order entered September 19, 1951, modifying a decree of divorce in favor of plaintiff, entered on May 17, 1948, with respect to the payment of alimony, reducing it from $20 to $8 per week. The order found the arrearage due under the decree for alimony and child support to be $1,868. In addition to this amount the order also found that defendant had removed the contents of a safety deposit box, one-half of which belonged to plaintiff, and that the value of her one-half was $1,079.18; that a total of $2,947.18 was due, upon which there had been paid $410, leaving a balance due plaintiff of $2,537.18. The order directed defendant to pay said total amount at the rate of $12 a week in addition to the alimony of $8 per week. The order further continued the payment of $10 per week for support of the minor child, making a total payment of $30 per week required by the order to be paid by defendant.

The original decree found plaintiff to be the beneficial owner of one-half of the contents of all safety deposit boxes held by them jointly and severally, and that such interest was to be in no way affected by the decree. It enjoined defendant and anyone acting for

366

him against tampering with or removing anything from said safety deposit boxes "unless the plaintiff or her attorney or other agent appointed by her is present in advance and at the time thereof." Unfortunately, the decree did not identify the contents of the safety deposit box or boxes or direct that her half interest be turned over to her. No reason is assigned upon this record as to why such disposition could not and should not have been made by the decree. The present conflict and burdensome expense of this proceeding, involving the contents of said safety deposit box, would have been avoided had such disposition then been made.

A previous petition and effort of defendant to have the original decree modified as to the payment of alimony was denied by the chancellor and the denial affirmed by this court. (*Pokorney v. Pokorney*, 339 Ill. App. 510.) The affirmance resulted from a failure to preserve the evidence necessary to review that order.

It appears that on July 20, 1949, defendant served notice that a petition would be filed for a rule to show cause against plaintiff why she should not be held for contempt of court for violation of the court's order granting defendant the right of visitation with the minor child; that the notice was returnable July 27, 1949, and that by agreement of the parties the hearing was to be continued to another date. The dispute arises as to whether the parties understood the date to be August 3, 1949, or August 8, plaintiff claiming that they relied on defendant's attorney to take care of the setting and to furnish the new date of the hearing to plaintiff. The petition came on to be heard on August 3, 1949, and in the absence of plaintiff and her attorney, two orders were entered. One modified the previous restraining order entered against defendant, restraining him from entering the safety deposit vault at the

Western National Bank of Cicero, and it granted him the right to enter and remove all of the contents contained in said safety deposit box. The other order found plaintiff in contempt for violating the order allowing visitation of the minor child and suspended the payment of child support until the further order of the court. It appears that on August 5, 1949, plaintiff's attorney learned of the entry of said orders and served notice that on August 16, 1949, he would move to vacate said orders. The motion to vacate was abandoned by plaintiff, and nothing was done regarding the said orders until she filed a petition on April 28, 1950, again seeking to vacate said orders of August 3, 1949.

The instant petition of defendant to modify the decree was filed on March 24, 1950, alleging a change in circumstances of the parties, in that plaintiff was then steadily employed since April 1949, with an average gross monthly earning up to March 1950 of $140, and that defendant's gross earnings have remained at $60 per week. Plaintiff filed an answer to said petition, in which she alleged that no payments of alimony had been made after April 8, 1949. She prayed that defendant be held in contempt for failure to pay the alimony and child support.

His petition to modify the decree, filed March 24, 1950, her answer thereto, and her petition for a rule to show cause against him and to vacate said orders of August 3, 1949, were referred to a "special commissioner" to hear evidence and report his conclusions of law and fact. The commissioner heard evidence, much of which was an agreed statement of facts. The commissioner made his report, and upon exceptions heard, the court sustained the report except as to the value of plaintiff's half interest in the securities and cash removed from the safety deposit box by defendant, and entered the order appealed from.

The commissioner's charge for his services was $483.60, which the defendant was directed to pay. The court reporter's charge of $107.85 was paid by plaintiff. One of the objections filed by defendant to the report was that his charges were excessive, considering the financial ability of defendant to pay.

■ ■ The only provision for the appointment of a special commissioner in the Divorce Act may be found in section 15 (Ill. Rev. Stats., ch. 40 [paragraph 16; Jones Ill. Stats. Ann. 109.183]), and there the reference to a special commissioner is limited to the determination of temporary alimony pending the suit. No such authority or provision for reference to a special commissioner, after decree, is found in section 18 [Ill. Rev. Stats. 1951, ch. 40, par. 19; Jones Ill. Stats. Ann. 109.186], which authorizes the modification of a decree for the payment of alimony. Therefore, in the absence of such a provision, the instant case, after decree entered, is governed by the rule announced in *Simpson v. Harrison*, 328 Ill. App. 425. This court, in the case cited, reviewed the various statutes in Illinois and the cases upon the subject and held that there can be no reference to a special commissioner unless specifically authorized by statute, and said (p. 432):

"The theory upon which this and other references to special commissioners are made is that the chancellor has inherent power to appoint or refer a cause to any qualified person, by whatever name he may be designated. In view of the ample provision made for the appointment of masters as assistants to the court and the availability of so many masters in Cook county to whom a reference could be made, this argument is untenable, and the practice of appointing special commissioners without any authority in the statute to do so, is indefensible."

369

To the same effect is *Phillips v. O'Connell,* 331 Ill. App. 511.

■ ■ There are twenty-eight masters of the superior court, elected by all of the judges of that court. They are required by statute to give bond and subscribe to an oath of office. Presumably, they are selected because the judges have confidence in such appointees, and under the statute they are accountable to the entire court for any violation of statutory duty. There is no such responsibility or requirements imposed upon a special commissioner. These special commissioners generally, as in the instant case, charge for their time the same as a regular master of that court. The instant case illustrates forcibly the evil of the practice developed in these divorce cases of appointing a special commissioner.

■ ■ This defendant, earning only $60 a week gross, complains that he is unable to meet the requirements of the decree for alimony and child support, and yet is taxed with the fees mentioned. The very fact that he was in arrears for alimony under the decree in the amount of $1,868, and was permitted by the instant order to pay it off at the rate of $12 a week, and the court felt justified in reducing the alimony to $8 a week from $20, demonstrates that the chancellor believed a hardship case was made out by the defendant, calling for equitable relief. Instead of referring the cause to a special commissioner, the chancellor, being apprised of the claim of hardship, and particularly where most of the facts were stipulated by the parties and are comparatively simple, should have heard the matter himself and thus avoided the additional expense of a hearing before a special commissioner. If, for some good reason, the chancellor could not hear the matter, and there was any emergency requiring an immediate hearing, then the chancellor might be justified in referring it to a regular master but not a special

commissioner. There was no such emergency appearing in the instant proceeding.

■ We feel also that the instant order works a gross injustice against the plaintiff and clearly violates her property rights, meager as they are. The instant order again confirms plaintiff's half interest in the contents of the safety deposit box in question and found the value of her half interest to be $1,079.18. Whether the court was justified by the order of August 3, 1949, in authorizing defendant to remove the contents of the box without requiring him to turn over her half to her is beside the point. The fact remains that he removed from the safety deposit box securities and cash which belonged to her. The court should have compelled him to account for her property upon this hearing and, if he had possession thereof, direct him to turn the same over to her. The least plaintiff was entitled to was a judgment for the value of her property found in the order. We find no warrant in the law for compelling her to take payment therefor at the rate of $12 a week, as provided in this order. The total payment required under the instant order is $30 a week. If he was unable to meet the payments of $30 a week under the original decree, and his earnings have not increased, how can he be expected to discharge his obligations under the instant order? It is neither logical nor consistent with any theory of equitable relief to which the chancellor determined defendant was entitled, as evidenced by the present order.

■ ■ We cannot say that the chancellor was unjustified in reducing the alimony to $8 per week upon the showing of her earnings since the previous application referred to for the modification of the decree. In *Smith v. Smith*, 334 Ill. 370, 382, the court said:

"The criterion is not whether the decree was right when entered, because all presumptions are in its favor,

but the question is, Has the necessity of the petitioner changed since the rendition of the decree, and has the ability of the husband to contribute to it also changed? (*Craig v. Craig*, 163 Ill. 176.)"

██ Plaintiff is in no position upon this appeal to complain of the orders entered August 3, 1949. Her attorney was aware of such orders on August 5, and he served notice on August 16, 1949, of a motion to vacate said orders but abandoned the motion, and nothing further was done about it until her petition filed April 28, 1950, to vacate the orders. The unexplained long delay noted, bars her right to complain of the orders.

[11, 12] It is argued that the court was in error in overruling the special commissioner as to the value of plaintiff's half interest in the contents of the safety deposit box. The commissioner's finding of the value was the face value of the bonds. Apparently the chancellor allowed the market value, which accounts for the difference. If, upon a further hearing, it becomes necessary to fix the amount, the market value would be proper. We think, too, that the chancellor was correct as to the amount of the arrearage.

The order is reversed and the cause remanded for further proceedings consistent with the views herein expressed.

*Reversed and remanded with directions.*

Lewe, P. J. and Kiley, J., concur.