ALFREDO MASS AND BRUNHILDE MASS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JOHN E. EICHELMAN AND CAROLEE EICHELMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 20863–80, 21191–80.     Filed August 17, 1983.

*Joseph N. DuCanto*, for the petitioners in docket No. 20863–80.

*James J. Gatziolis* and *Stuart A. Cohn*, for the petitioner Carolee Eichelman in docket No. 21191–80.

John E. Eichelman, pro se in docket No. 21191–80.

*Judith M. Picken*, for the respondent.

HAMBLEN, *Judge*: Respondent determined deficiencies in petitioners' Federal income taxes as follows:

*Petitioners Mass*

| Year | Amount |
|------|--------|
| 1975 ......................... | [1]$28,151.00 |
| 1976 ......................... | 27,859.30 |
| 1977 ......................... | 28,718.53 |

*Petitioners Eichelman*

| 1977 ......................... | 20,202.12 |

After concessions, the issues for decision all relate to the nature of payments by petitioner Alfredo Mass to his former spouse, petitioner Carolee Eichelman. Specifically, we must decide: (1) Whether certain payments made to a former spouse are properly deductible by the payor under section 215(a);[2] (2) whether such payments are properly includable as income by the payee under section 71(a); and (3) as an alternative to (2) above, whether such payments are properly includable as income by the payee under section 61.

## FINDINGS OF FACT

All of the facts have been stipulated[3] and are found accordingly. The pertinent facts are recited here.

Petitioners Alfredo and Brunhilde Mass (hereinafter Alfredo and Brunhilde), husband and wife, resided in Skokie, Algonquin, and Chicago, Ill., respectively, when they timely filed their joint Federal income tax returns for 1975, 1976, and 1977, respectively, with the Internal Revenue Service Center at Kansas City, Mo., and resided in Chicago, Ill., when they filed their petition in this case. Petitioners John E. and Carolee Eichelman (hereinafter John and Carolee), husband and wife, resided in Chicago, Ill., when they timely filed their joint 1977 Federal income tax return with the Internal

---

[1]A portion of the determined deficiency in the Masses' 1975 taxes resulted from respondent's disallowance of petitioners' claimed exemption for Pilar Mass, a daughter of petitioner Alfredo Mass. However, respondent has conceded this issue.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]The stipulation of facts was entered into by petitioners Alfredo and Brunhilde Mass, petitioner John E. Eichelman, and respondent. Petitioner Carolee Eichelman did not join in the stipulation, but executed a separate stipulation in which she agreed to be bound by our decision in this case.

Revenue Service Center at Kansas City, Mo., and when they filed their petition in this case.

Prior to their current marriages, Alfredo and Carolee were married to each other on February 6, 1954, and were divorced on September 26, 1973. During their marriage, Alfredo and Carolee had six children. At the time of their parents' divorce, the children's ages were 18, 17, 14, 13, 11, and 8 years, respectively. At that time, Alfredo was employed as a pathologist earning an annual gross income of $110,000 and Carolee was a homemaker with no independent income.[4]

Two weeks prior to their divorce, Alfredo and Carolee executed a "Property Settlement Agreement" (hereinafter agreement) dated September 12, 1973. It provided, in pertinent part:

A: THE HUSBAND AGREES:

1: To pay to the wife for her maintenance and support during her lifetime and over a period of twenty years, regular monthly installments according to the following schedule, commencing January 1, 1974:

|  |  |  |  |  |
|---|---|---|---|---|
| $4,583.33 | × | 144 months | (12 years) | $659,999.52 |
| $3,783.33 | × | 24 months | ( 2 years) | 90,799.92 |
| $2,983.33 | × | 24 months | ( 2 years) | 71,599.92 |
| $2,183.33 | × | 24 months | ( 2 years) | 52,399.92 |
| $ 800.00 | × | 24 months | ( 2 years) | 19,200.00 |
| TOTALS: |  |  | 20 years | $893,999.28 |

At the end of the twentieth year, or by agreement at the end of any calendar year, the monthly amount may be negotiated between the parties. However, the sum agreed to be paid the wife shall be subject to change in accordance with the changed circumstances of the parties, and in accordance with the needs of the wife and the earning capacity of the husband, and in the event either party desires a change of monthly payments and they are unable to agree on the amount to be thereafter paid, either party may thereupon submit the question to be determined to the Circuit Court of Lake County or other court having jurisdiction of the parties, and each party agrees to be bound by the determination and judgment of such court.

2: To provide a home and assume the care, custody, education and support for [the two oldest children] until they have completed their Post-graduate College studies.

---

[4]The stipulation of facts in this case refers only to Alfredo's income. However, Carolee's circumstances are clear from the record as a whole and from the facts as stated in *In re Marriage of Mass*, 102 Ill. App. 3d 984, 985, 431 N.E.2d 1 (1981), appeal denied 91 Ill. 2d 560 (1982), of which we take judicial notice pursuant to Rule 201, Fed. R. Evid., Pub. L. 93–595. See also sec. 7453; Rule 143(a).

B: THE WIFE AGREES:

1: To provide a home and assume the care, custody, education and support for [the four youngest children] until they have completed their Post-Graduate College studies.

2: To accept payments and conveyances, as above provided, in full and complete settlement and release of all claims and demands of every kind or nature against the husband, including all liability now or at any time hereafter existing or accruing either on account of support, maintenance, temporary or permanent alimony, dower or rights in lieu thereof, incident to the marriage relation, intending hereby to release husband entirely from all personal claims and demands and from any that may hereafter attach, arising in any manner from the relation of husband and wife, and from all claims or interest whatsoever in any property which the husband may now own or may at any time hereafter hold or acquire any interest whatsoever in, either by devise, bequest, purchase or otherwise; it being understood that this settlement is a total and complete release of husband by wife of all matters and charges whatsoever, and that the wife shall, after this settlement, require nothing whatever of the husband as though the marriage relation had never existed.

\*    \*    \*    \*    \*    \*    \*

6: To educate and maintain the children in the style and manner in which they are now living and in which they have been accustomed to live.

The agreement also contained provisions for disposition of the marital residence, division of its furnishings, debt and liability indemnification, continuance of Alfredo's life insurance for Carolee's benefit, and other such matters not relevant to the issues now before us. It went on to provide for mutual agreement that:

If either party shall hereafter apply for a divorce and the court shall grant the same, this agreement shall be submitted to the court for approval, and, if it is approved by the court, the terms thereof shall be carried into the decree of divorce and operate as a final determination of the property rights of the parties, subject to the provisions herein for modification in case of changed conditions of the parties.

The agreement was incorporated by reference in the divorce decree entered by the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Ill., in the divorce action involving Alfredo and Carolee. Therein, the court "adjudged, ordered, and decreed":

B. That the Agreement attached hereto be and the same is hereby found to be fair, reasonable and equitable under all the facts and circumstances of this case and same is incorporated in this decree of divorce, and by this reference made a part hereof as though fully spelled out herein; and further

that the parties hereto in all respects comply with each and every provision of the agreement aforesaid.

Carolee was married to John in December of 1973. In September of 1973, when Alfredo and Carolee executed their agreement[5] and their divorce decree was entered, he knew of her contemplated marriage to John. When Alfredo made his first payment to Carolee in January of 1974, he knew of her marriage during the previous month.

As of the date of Carolee's marriage to John, no payments were required nor had been made by Alfredo to Carolee under the agreement or the divorce decree. Monthly payments in the amount of $4,583.33, each, were made by Alfredo to Carolee for the period from January 1, 1974, through December 31, 1977, inclusive, for a total of 48 payments in the aggregate amount of $219,999.84, or approximately $55,000 per year for 4 years.

Prior to April 19, 1979, neither Alfredo nor Carolee exercised their rights, under the agreement and the decree, to seek modification of the amount of monthly payments or to request revision by a court of competent jurisdiction. On April 19, 1979, Alfredo filed a petition for modification or termination in the Cook County Circuit Court on the basis of changed circumstances. The final decree of that court was appealed by both Alfredo and Carolee. On December 23, 1981, the Illinois Appellate Court entered its decision on appeal, reversing the order of the lower court and remanding the case for the termination of payments to Carolee and the determination of reasonable child support and educational expense allowances. In its determination, the court held, as a matter of State law, that the agreement had not merged into the decree but rather retained its independent legal enforceability.

For the years 1974, 1975, and 1976, Carolee[6] reported all payments received from Alfredo as taxable income in the form

---

[5]The stipulation of facts in this case refers only to Alfredo's knowledge as of the date of divorce and is silent as to his knowledge as of the date of execution of the agreement. However, we take judicial notice of Alfredo's knowledge. See note 4 *supra*, and *In re Marriage of Mass, supra* at 987.

[6]For the sake of clarity, all actions concerning the returns of John and Carolee are referred to herein as those of Carolee only. Such references do not in any way negate the joint and several liability of John and Carolee for Federal income taxes. See sec. 6013(d)(3); sec. 1.6013–4(b), Income Tax Regs.

of alimony. On her 1977 return, however, she did not report that year's payments as income. Instead, she attached the following explanation to the 1977 return:

Taxpayer, CAROLEE EICHELMAN, received $55,000.00 from her former spouse during 1977. It is the taxpayers' position that the payments received by CAROLEE EICHELMAN are not taxable income. The payments ($55,000.00) received during 1977 were *child support* because ever since Carolee Eichelman's remarriage on December 2, 1973, the payments received were no longer taxable alimony. Under Illinois law, any "legal obligation" of the petitioner's former husband with respect to the payment of alimony was terminated upon the petitioner's remarriage. Therefore, the payments in question are not includable in petitioner's income under sec. 71(a)(1), I.R.C. 1954.

Consistent with this philosophy, Carolee also filed amended returns for 1974, 1975, and 1976, seeking a refund of all taxes previously paid in respect to the $55,000 received from Alfredo during each of those years.[7]

Alfredo married Brunhilde in February of 1974,[8] and filed his Federal income tax returns jointly with her for all relevant years. For the years 1974 through 1977, he[9] treated all payments to Carolee as itemized deductions in the form of alimony paid.[10]

In his notice of deficiency to Alfredo, respondent disallowed the deductions taken for taxable years 1975, 1976, and 1977, on the ground that the deductible nature of the payments had not been established. In his notice of deficiency to Carolee, respondent rejected the theory that the $55,000 received from Alfredo during 1977 constituted excludable child support payments and, instead, required inclusion of that amount in gross income.

Alfredo maintains that all payments made by him to Carolee in accordance with the terms of the agreement and the

---

[7]We take judicial notice of this fact. See note 4 *supra*, and *In re Marriage of Mass, supra* at 987.

[8]See note 4 *supra*, and *In re Marriage of Mass, supra* at 987.

[9]Consistent with note 6 *supra*, all actions concerning the returns of Alfredo and Brunhilde are referred to herein as those of Alfredo only, without negation of joint and several liability for Federal income taxes.

[10]The treatment of the payments for taxable years 1975, 1976, and 1977 is clear from the returns filed for those years, admitted as evidence in this case. The identical treatment of the 1974 payments, not before us in this case, is judicially noticed. See note 4 *supra*, and *In re Marriage of Mass, supra* at 987.

decree are deductible by him pursuant to section 215. Carolee maintains that such payments do not constitute gross income to her because they do not meet the requirements of section 71(a). Furthermore, she asserts that the amounts received are nontaxable child support payments under section 71(b) and are, therefore, not includable as gross income by her under either section 71(a) or section 61.

OPINION

The deductibility of amounts paid under section 215 is determined by reference to section 71. Section 215(a) provides in relevant part:

SEC. 215(a). GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

Therefore, any disqualification from inclusion by the recipient spouse under section 71 will automatically preclude deduction by the payor under section 215. The converse, however, is not true. The failure of a payment to qualify as deductible by the payor under section 215 means only that the item was correspondingly not includable by the payee as income *under section 71*. However, the same item may nonetheless constitute gross income under section 61[11] unless some other provision permits exemption or deduction.

It is for this reason that, while arguing that payments received by Carolee must be included by her as income under section 71, respondent asserts his alternative theory of inclusion under section 61. Consideration of possible inclusion under the broader realm of section 61 may properly be postponed until after our determination below of inclusion under section 71. In the event that section 71(a) is found applicable to Carolee, analysis of section 61 in this context will be unnecessary.

Section 71(a)(1) sets forth the requirements for inclusion in gross income of payments received pursuant to *a decree of divorce or separate maintenance*.[12] In sum, qualification for

[11]Sec. 61 defines "gross income" as including "all income from whatever source derived."

[12]Sec. 71(a)(1) provides: "If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic

inclusion of payments under section 71(a)(1) requires: (1) That the payments are periodic; (2) that the payments are attributable to the payee's relinquishment of support rights, as opposed to property rights, child support, or other distinguishable sources of obligation; (3) that the payments are made pursuant to a decree of divorce or separate maintenance or to a written instrument incident thereto; and (4) that the payor is under a legal obligation to make the payments.

As an alternative to section 71(a)(1), section 71(a)(2)[13] provides identical tax treatment for payments received pursuant to *a written separation agreement.* Qualification for inclusion of payments under section 71(a)(2) has the same requirements as under section 71(a)(1), with one exception: Unlike section 71(a)(1), section 71(a)(2) does not require that payments be made pursuant to a legal obligation to do so.

Within this statutory framework, we must determine whether the payments to Carolee by Alfredo were includable by her and deductible by him for Federal income tax purposes. Each element of section 71(a) must be separately examined, as conformity with *all* elements is required.

1. *Periodicity*: Both sections 71(a)(1) and 71(a)(2) require that payments be periodic. Installment payments discharging a principal sum obligation (as opposed to continuing payments of an indefinite duration) are normally not regarded as periodic payments. Sec. 71(c)(1). See also sec. 1.71–1(d)(1), Income Tax Regs. However, section 71(c)(2) provides an exception to this general rule.[14] It states in relevant part:

If, by the terms of the decree, instrument, or agreement, the principal sum * * * is to be paid or may be paid over a period ending more than 10 years

---

payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation."

[13]Sec. 71(a)(2) provides: "If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship)."

[14]See also sec. 1.71–1(d)(2), Income Tax Regs.

from the date of such decree, instrument, or agreement, then * * * the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. * * *

Under the payment terms agreed to by Alfredo and Carolee, the possibility of extended payments is raised in the language following the regular payment schedule. Therein, the agreement provides for the monthly amounts of payments beyond the 20th year to be negotiated by the parties. Even if we discount this possibility of continued payments and consider only the payments specified in the agreement, the periodicity requirement is met. The agreement requires the principal sum of $893,999.28 to be paid over a 20-year period. The total payments in any one taxable year do not exceed 10 percent of this principal sum. The largest payments are only $54,999.96 annually (12 months $\times$ $4,583.33 per month), well under the prohibited boundary of $89,399.93 (10 percent of $893,999.28). Therefore, under the exception to section 71(c)(1) provided in section 71(c)(2), we find that the periodicity requirement of section 71(a) is met.[15]

2. *Nature of Payments*: Both sections 71(a)(1) and (2) require that payments be made "because of the marital or family relationship." Disputes frequently arise as to whether particular payments are in discharge of support or other marital rights (and hence are qualified) or in discharge of property rights not arising from the marital or family relationship (and hence are not qualified).[16] In this case, however, neither Carolee nor respondent challenges Alfredo's assertion of deductibility on this ground. The terms of the agreement

---

[15]We note that an additional exception to the periodicity requirement is provided in secs. 1.71–1(d)(3) and 1.71–1(d)(4), Income Tax Regs. Thereunder, the periodic discharge of principal sum obligations is treated as periodic payments where modification is permitted upon the death of either spouse, the remarriage of the recipient spouse, or the changed economic status of either spouse. In such cases, the actual total to be paid is regarded as uncertain. The modification provisions included in the agreement between Alfredo and Carolee present the possibility of this exception. However, its application is unnecessary where sec. 71(c)(2) has led us to the identical conclusion, i.e., that the payments shall be treated as periodic.

[16]Among many other cases dealing with this distinction, see, e.g., *Gammill v. Commissioner*, 73 T.C. 921 (1980); *Hesse v. Commissioner*, 60 T.C. 685 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975); *Thompson v. Commissioner*, 50 T.C. 522 (1968); *Bardwell v. Commissioner*, 38 T.C. 84 (1962), affd. 318 F.2d 786 (10th Cir. 1963).

support our finding that any property rights held by Carolee were compensated for outside of the monthly payment provisions. The division of the marital residence and its furnishings, the only apparent substantial assets of the couple, were separately provided for in the agreement. Thus, there is no controversy as to whether Alfredo's payment obligations arose from marital, rather than property, rights relinquished by Carolee.

However, Carolee argues that the payments are not controlled by section 71(a) because they constitute payments to support minor children. Section 71(b) provides for the tax treatment of such payments. It states in relevant part:

Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. * * *

Child support cannot be inferred from intent, surrounding circumstances, or other subjective criteria. Rather, the statutory directive that child support payments be "fixed" is taken literally. The regulations expand upon the language of section 71(b) to require that sums payable for child support be "specifically designated" as such. Sec. 1.71–1(e), Income Tax Regs. The inflexibility of this requirement was recognized by the Supreme Court in *Commissioner v. Lester*, 366 U.S. 299 (1961). In that case, the Court refused to satisfy the statutory requirement by drawing an inference from the fact that the parties' agreement provided for percentage reduction of payments by a husband to a wife upon the marriage, emancipation, or death of any of their three children. The Court examined the legislative history of the statutory predecessor of section 71(b), and quoted from the report of the Office of the Legislative Counsel to the Senate Committee, which said:

"If an amount is specified in the decree of divorce attributable to the support of minor children, that amount is not income of the wife * * * . If, however, that amount paid the wife includes the support of children, *but no amount is specified for the support of the children,* the entire amount goes into the income of the wife * * * ."

Hearings before Senate Committee on Finance on H.R. 7378, 77th Cong., 2d Sess. 48, as quoted in *Commissioner v. Lester, supra* at 303 (emphasis supplied therein). The Court went on to conclude:

This language leaves no room for doubt. The agreement must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income. The statutory requirement is strict and carefully worded. It does not say that "a sufficiently clear purpose" on the part of the parties is sufficient to shift the tax. It says that the "written instrument" must "fix" that "portion of the payment" which is to go to the support of the children. Otherwise, the wife must pay the tax on the whole payment. We are obliged to enforce this mandate of the Congress. [*Commissioner v. Lester, supra* at 303.]

In applying the principle of *Lester*, we have repeatedly refused to allow inference, intent, or other nonspecific designation of payments as child support to override the clear rule of section 71(b). See *Blakey v. Commissioner*, 78 T.C. 963 (1982); *Giordano v. Commissioner*, 63 T.C. 462 (1975); *Talberth v. Commissioner*, 47 T.C. 326 (1966); *Grummer v. Commissioner*, 46 T.C. 674 (1966).

In the case now before us, there was no specific designation of any amounts or portions of the payments made to Carolee as child support. On the contrary, the agreement states that the payments were to be made "to the wife for her maintenance and support." In these circumstances, arguments that the payments were in the nature of child support are moot. Numerical analyses of the relation between the declining amounts of the payments and the advancing ages of the children are also irrelevant. Similarly, computations designed to show that the agreement was not economically viable from Alfredo's viewpoint unless the payments were deductible by him have no effect on our determination in this context. Under the clear language of section 71(b), and for no other reason, we find that payments made by Alfredo to Carolee did not constitute child support where they were not designated as such in the agreement. Therefore, we hold that all payments were made "because of the marital or family relationship" as required by sections 71(a)(1) and 71(a)(2).

3. *Paid Under Decree, Instrument, or Agreement*: Where there is a decree of divorce or separate maintenance, section 71(a)(1) requires that payments be made "under the decree or under a written instrument incident to such divorce or separation." Where there is no decree but parties have separated under a written separation agreement, section 71(a)(2) correspondingly requires that payments be made "under such agreement."

The case before us offers two possible sources under which payments might be considered to have been made: the divorce decree and the agreement. In our view, it cannot reasonably be disputed that the requirement that payments be made *under a decree* has been met for purposes of section 71(a)(1) because the decree, through incorporation of the agreement as an instrument incident thereto, required that the payments be made pursuant to the agreement, as the decree specifically ordered compliance with all terms of the agreement. Arguments as to the legal propriety of such payments under the decree are properly directed not at the requirement of payment "under a decree," but more appropriately at the "legal obligation" requirement, discussed below.

The more troublesome question is whether payments were made *under an agreement* for purposes of section 71(a)(2). The answer to this question depends on whether the agreement retained independent legal significance after its incorporation in the decree. Alfredo asserts that, even after the decree was entered, payments were made pursuant to the agreement. Carolee rejects this theory, arguing that the agreement became unenforceable in its own right when incorporated in the decree. As of the entry of the decree and before any payments were made, Carolee believes the agreement merged into the decree and lost its independent legal status. She concludes, therefore, that payments made by Alfredo were received by her pursuant to the decree, rather than pursuant to the agreement. Thus, they are not includable by her under section 71(a)(2).

Carolee's conclusion is correct only if its underlying premise of merger is valid. We find that it is not. To understand this finding, examination of Illinois law regarding the doctrine of merger is necessary.

It is noteworthy that the doctrine of merger was abolished in Illinois by the enactment in 1980 of section 502 of the Illinois Marriage and Dissolution of Marriage Act (hereinafter IMD-MA).[17] Thereunder, dual remedies are available; an agreement incorporated in a final decree is enforceable both as a contract and as a judgment.

---

[17] Ill. Ann. Stat. 1980, ch. 40, par. 502(e) (Smith-Hurd 1980).

The status of an incorporated agreement prior to the enactment of IMDMA, however, is less clear. Cases interpreting Illinois law frequently appeared to conclude that merger was automatic upon judgment. See, e.g., *Hoffman v. Commissioner*, 54 T.C. 1607 (1970), affd. 455 F.2d 161 (7th Cir. 1972); *Jacobs v. Jacobs*, 328 Ill. App. 133, 65 N.E.2d 588 (1946); *Adler v. Adler*, 373 Ill. 361, 26 N.E.2d 504 (1940); *Smith v. Smith*, 334 Ill. 370, 166 N.E. 85 (1929). In so doing, the distinction between incorporation and merger was often overlooked. We are not, however, bound by determinations of Illinois courts on this point of State law where there is no controlling decision by the highest State court. *Commissioner v. Estate of Bosch*, 387 U.S. 456 (1967); *Gordon v. Commissioner*, 70 T.C. 525 (1978). Nor do we accept that the occurrence of merger was as automatic as these cases or Carolee might have us believe.

Close scrutiny of Illinois cases reveals that, even before the 1980 enactment of IMDMA, a divorce decree did not necessarily supersede the provisions of a prior agreement. For example, in the commonly cited case of *Adler v. Adler, supra,* merger was found to have occurred where a supplemental trust indenture and agreement were incorporated in a divorce decree. However, the dicta of *Adler* suggests that, despite the particular finding of merger, possibilities remain for parties to avoid such a result. The court stated:

It was lawful for [husband] and [wife] to specify in the supplemental trust indenture and agreement * * * that the quarterly payments to [wife] should continue for her life regardless of her subsequent marriage. [Wife] could rely on the contract for the payment, and in the event of a breach in any of its parts, could bring appropriate action for the enforcement of its provisions, or she had the right with the approval of [husband], to have a consent decree entered adopting the provisions of the agreement. The latter action having been taken, the provisions for quarterly payments to [wife] as provided in the [agreement] became merged in the decree. [*Adler v. Adler*, 26 N.E.2d at 508–509.]

This Court's own decision in *Hoffman v. Commissioner, supra,* is similar to that in *Adler* and other cited decisions by Illinois courts in that it appears to ignore the distinction between incorporation and merger. *Hoffman* involved the termination of a husband's legal obligation to continue payments after his wife's remarriage. The disputed payments were required under an agreement entered into by the parties contemporaneously with the entry of a decree of divorce in

which the terms of the agreement were restated. In finding that the payments made by the husband after the wife's remarriage were not qualified under section 71(a), we stated:

In any event, it is established under Illinois law that where an agreement is incorporated into the divorce decree, it loses its contractual nature and is merged into the decree. Thereafter, it is enforced as an element of the decree. * * * Consequently, after a divorce decree is entered, the rights of the parties depend upon the decree and not upon their agreement. * * * [Hoffman v. Commissioner, supra at 1612; citations omitted.].

Hoffman states the general rule where a prior agreement is incorporated in a divorce decree. However, it does not consider the contrary results which will ensue where the parties succeed in rebutting the presumption that incorporation begets merger. The rebuttal of this presumption was not at issue in Hoffman. On the contrary, the evidence showed that the agreement did not purport to rebut the presumption and avoid merger, but rather required merger by its very terms. The agreement was not a previously existing independent contract, but was executed in connection with divorce proceedings and enforceable only in the event of divorce. As we explained in our opinion:

The agreement * * * went on to provide that the provisions of the agreement were applicable only if a decree of divorce had been entered with the agreement having been included therein. Therefore, it would appear that by the terms of the parties' own contract it was the decree which was to establish the rights and duties of the parties, and that without it, the agreement could have no legal effect. [Hoffman v. Commissioner, supra at 1612.]

These factual circumstances in Hoffman are clearly distinguishable from those in the case now before us. Our decision in Hoffman does not foreclose the possibility that parties may prevent their contractual agreements from merging into subsequent divorce decrees.

The alternative of incorporation without merger was examined by the Illinois Appellate Court in its own consideration of the problems of Alfredo and Carolee. In re Marriage of Mass, 102 Ill. App. 3d 984, 431 N.E.2d 1 (1981), appeal denied 91 Ill. 2d 560 (1982). While we are not bound by this determination,[18]

---

[18]See Commissioner v. Estate of Bosch, 387 U.S. 456 (1967); Gordon v. Commissioner, 70 T.C. 525 (1978).

our own examination of Illinois law leads us to the same conclusion.

Under Illinois law before IMDMA, there were four alternative methods by which support payments to a divorced spouse could be made: "periodic alimony," "alimony in gross," "property settlements," and "contractual support." "Alimony in gross," also referred to as "lump sum settlement in lieu of alimony," is not an option in the instant case. The fact that the agreement permitted modification of payments due to changed circumstances and. allowed extention of payments beyond the initial 20-year period precludes this classification. See *Roberts v. Roberts*, 90 Ill. App. 2d 184, 234 N.E.2d 372 (1967). Nor could payments by Alfredo have been a "property settlement" for reasons discussed earlier in this opinion. See also *Ihle v. Ihle*, 92 Ill. App. 3d 1115, 416 N.E.2d 366 (1981). Thus, the payments by Alfredo to Carolee must have been either "periodic alimony" or "contractual support." The form of these two alternatives is often indistinguishable. The distinction lies in the source of the payment obligation. "Periodic alimony," by definition, was a support allowance *in a divorce decree*. See, e.g., *Adler v. Adler, supra*; *Stillman v. Stillman*, 99 Ill. 196 (1881). By contrast, "contractual support" provided payments as required *in an agreement*.

The Illinois Appellate Court held that the payments by Alfredo to Carolee arose from the agreement. It reasoned:

> To conclude that the payments were "periodic alimony," and thus that Alfredo had no duty to make them, would be contrary to the evidence in the record. Alfredo actually made the payments and even he insists he had a duty to make the payments, at least until he filed his petition for modification. Both parties, when they entered into the agreement, intended the payments to extend beyond Carolee's remarriage and thus could not have intended for the payments to be "periodic alimony." Thus, it is clear that we must conclude that no merger of the agreement into the decree occurred in this case. A holding of nonmerger is the only just solution. The parties must not have intended merger and we find no just reason to defeat this intent. Accordingly, we hold that the parties' settlement agreement did not merge in the divorce decree. * * * [*In re Marriage of Mass, supra* at 999.]

We agree with this result.

Thus, we conclude that, prior to IMDMA, the incorporation of an agreement in a subsequent divorce decree did not automatically effect a merger of the agreement. Rather, incorporation raised a presumption of merger which, if not

rebutted, controlled. However, where evidence of intent contrary to merger is convincing, the presumption may be overcome and the agreement may survive incorporation.

In this case, we are convinced that the strong showing of the parties' intent that their agreement survive Carolee's marriage to John is more than sufficient to rebut the presumption of merger. The evidence includes the following persuasive facts: When the agreement was negotiated and executed, both Alfredo and Carolee were aware of her impending marriage. It is ludicrous to suggest, much less to conclude, that the parties knowingly entered into an agreement which would evaporate before its performance was even begun. Furthermore, the agreement specifically provides for payments to continue for at least 20 years and does not include remarriage as a ground for modification of payment terms or amounts. Alfredo's financial position at the time of the divorce also supports our finding of an intent that the agreement survive divorce. Under the tax rate applicable in 1979, Alfredo's annual income of $110,000 placed him in a potential 50-percent Federal income tax bracket before deductions. Sec. 1. If Alfredo paid $55,000 to Carolee without deduction and another $55,000 in taxes on his unreduced gross income of $110,000, he would have depleted his entire income before spending any amounts for his own expenses or for the support of his two oldest children. Clearly, the payments to Carolee were intended to be deductible by Alfredo despite the parties' anticipated divorce. Finally, we note that Alfredo continued to make the payments and to deduct them even after Carolee's marriage to John.

Consistent with our above analysis, we find that all payments in issue were made pursuant to a decree, instrument, or agreement. For purposes of section 71(a)(1), we find that payments were made pursuant to the divorce decree. At the same time, however, we find that payments were made pursuant to the agreement for purposes of section 71(a)(2) because, where merger had not occurred, the independent enforceability of the contract was not superseded by the decree. This conclusion that the same payments can be made pursuant to the decree and simultaneously pursuant to the agreement is consistent with the dual remedy theory of incorporation without merger.

4. *Legal Obligation*: The requirement that payments be made pursuant to a "legal obligation" applies only to section 71(a)(1). Therefore, even its absence would not alter our conclusion, implicit in the foregoing analysis of the other three factors of section 71(a), that all requirements of section 71(a)(2) have been met. Where that is true, there is no need for payments to also qualify for inclusion under section 71(a)(1). Nonetheless, because the issue has been argued by all parties to this case and in order to complete our application of section 71(a) to the instant facts, we consider this factor as it determines inclusion under section 71(a)(1).

In the explanation attached to her 1977 Federal income tax return, Carolee argues that the disputed payments were not income to her because they were not paid pursuant to a legal payment obligation. She claims that her marriage to John prohibited any payments received thereafter from being classified as alimony because, under State law, alimony automatically terminated upon the subsequent marriage of the recipient spouse.

Illinois law in effect during the taxable years in issue provided:

A party shall not be entitled to alimony and maintenance after remarriage * * * . [Ill. Rev. Stat. 1973, ch. 40, par. 19 (repealed 1977).] [19]

Thus, Carolee asserts, payments made to her by Alfredo after her marriage to John (i.e., all payments involved herein) did not qualify under section 71(a)(1) because State law prohibited such payments, thereby removing Alfredo's legal obligation to make them.

The characterization of payments under State law is not controlling of Federal income tax consequences. *Henry v. Commissioner*, 76 T.C. 455 (1981). However, while the requirements of section 71(a) must be considered independently of State law determination, the impact of State law is squarely felt in any analysis of whether payments are made in discharge of a legal obligation. In other words, while Illinois law does not determine "Is this income?," it does determine "Is this a legal obligation?"; and a negative answer to this latter

---

[19]We note the subsequent repeal of this statute, but note also that the repeal has no retroactive application.

question, in turn, prevents a payment from qualifying under the Federal statutory definition. Cf. *Lyeth v. Hoey,* 305 U.S. 188 (1938).

Our earlier analysis of merger leads to the conclusion that the termination of alimony provision of the Illinois statute did not relieve Alfredo of his legal obligation to make payments to Carolee. Where no merger occurred and the agreement survived incorporation in the divorce decree, Alfredo remained obligated to make contractual support payments to Carolee. Carolee's marriage to John removed Alfredo's obligation under the decree, but it did not terminate his identical obligation under the agreement. The alternative requirement of section 71(a)(1) permits the obligation to be found in "a written instrument incident to" the decree. The agreement, having been incorporated by reference in the decree, provides this obligation where the decree itself cannot.

For the reasons stated above, we conclude that all four requirements of section 71(a)(1), as well as the three requirements of section 71(a)(2), were satisfied by the payments made by Alfredo to Carolee. There is nothing to prohibit qualification under both of these sections, although qualification under either would be sufficient. The dual qualification results from our finding that the payments were required and made both under the decree and the instrument incident thereto (i.e., payments pursuant to *a decree of divorce*) and under the agreement itself (i.e., payments pursuant to *a written separation agreement*). Thus, we hold that all payments received by Carolee from Alfredo must be included by her in gross income pursuant to section 71(a).

Having concluded that payments are income to Carolee under section 71(a), there is no need to consider respondent's alternative argument that these same payments constitute gross income under section 61.

Furthermore, because inclusion in Carolee's gross income has been determined under section 71, the corresponding requirement for deduction by Alfredo under section 215 has been fulfilled. By his presentation of evidence and argument in this case, Alfredo has met his burden of proof as to his entitlement to his claimed deductions. See *New Colonial Ice Co. v. Helvering,* 292 U.S. 435 (1934); *Welch v. Helvering,* 290 U.S. 111 (1933); see also Rule 142(a). Therefore, we hold that

all payments made by Alfredo to Carolee are properly deductible by him pursuant to section 215.[20]

Finally, we note the position of John in this matter. In his individual pro se brief filed with this Court, John informs us that he and Carolee have now separated. He further notes that he is not in a financial position to pay delinquent taxes and that, having been a Catholic priest for 20 years prior to his marriage to Carolee, he was disadvantaged in his understanding of secular matters including Federal income tax laws. He asserts that Carolee had total dominion over all funds received from Alfredo, and that these moneys were used for the benefit of Carolee and her children, and not for him. While we sympathize with John's circumstances, we cannot remedy them. Where John was legally married to Carolee and filed tax returns jointly with her, he is jointly and severally liable for any deficiencies therein. See sec. 6013(d)(3); sec. 1.6013–4(b), Income Tax Regs. Relief from this circumstance might be found in whatever contractual arrangements John and Carolee might make between themselves or might be imposed upon them by a local court of competent jurisdiction. It cannot, however, be provided by this Court.

We have considered the other arguments of all parties to this case and find them unpersuasive.

To reflect the foregoing,

> *Decision will be entered for the petitioners in docket No. 20863–80.*

> *Decision will be entered for the respondent in docket No. 21191–80.*

---

[20]We note respondent's position in Rev. Rul. 81–8, 1981–1 C.B. 42, issued in conjunction with his acquiescence in our decision in *Hoffman v. Commissioner*, 54 T.C. 1607 (1970), affd. 455 F.2d 161 (7th Cir. 1972). Therein, respondent states: "Pursuant to the authority contained in section 7805(b) of the Code, this revenue ruling will not be applied to disallow deductions under section 215 for payments made on or before January 12, 1981, the date this revenue ruling is published in the Internal Revenue Bulletin." All disputed payments made by Alfredo in this case occurred prior to the prospective application date stated in the ruling. Therefore, even had we decided otherwise on the issue of qualification of payments under sec. 71(a), Alfredo's deductions under sec. 215(a) should be allowed pursuant to respondent's own expressed policy.