2026 IL App (1st) 251193-U

FOURTH DIVISION
Order filed: February 5, 2026

No. 1-25-1193

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *IN RE*: THE MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| JOHN SCHOEN, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 2022 D 3108 |
| and | ) | |
| | ) | |
| MICHELLE SCHOEN, | ) | Honorable |
| | ) | Michael Forti, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE QUISH delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court properly dismissed the respondent's counter-petition for dissolution of marriage for lack of subject matter jurisdiction as neither party satisfied the residency requirement in section 401(a) of the Illinois Marriage and Dissolution of Marriage Act. The circuit court's finding that respondent abandoned her Illinois residency by the time the petition for dissolution was filed was not against the manifest weight of the evidence. Petitioner was entitled to voluntarily dismiss his own petition for dissolution.

¶ 2    Respondent Michelle Schoen ("Michelle") appeals from the order of the circuit court of

Cook County, which, *inter alia*, granted the motions of petitioner John Schoen ("John") to

voluntarily dismiss his petition for dissolution of marriage and dismissed Michelle's counter-petition. The circuit court held that it lacked subject matter jurisdiction over this case because the parties failed to comply with the residency requirement in section 401(a) of the Illinois Marriage and Dissolution of Marriage Act ("Act") (750 ILCS 5/401(a) (West 2024)). For the following reasons, we affirm.[1]

¶ 3       The parties were married in 2012 in Illinois and have one child, J.S., who was born in 2013. During the parties' marriage and until at least March 2022, they lived in Illinois. On April 18, 2022, John, through counsel, filed a verified petition for dissolution of marriage in the circuit court of Cook County. John alleged that both he and Michelle were residents of Illinois. On May 5, 2022, Michelle, also through counsel, filed a verified response where she admitted John's allegations of both her and John's Illinois residency. She filed a verified counter-petition for dissolution of marriage, alleging that she was a resident of Illinois "at this time and 90 days prior to the filing of this Counter-Petition." She alleged that John "availed himself to the jurisdiction of Illinois but was also a resident of the State of Illinois 90 days prior to the filing of this Counter-Petition."

¶ 4       In August 2022, the parties, through counsel, entered an agreed Allocation Judgment, setting a parenting schedule and allocating parental decision-making for J.S. The Allocation Judgment provided that J.S. would attend school in the school district in which Michelle resides so long as she resided at a specific address in Leander, Texas. The parties acknowledged that they

---

[1] This matter qualifies for an accelerated disposition under Supreme Court Rule 311(a) (eff. Jul. 1, 2018). Based on the date the notice of appeal was filed, a decision in this case was originally due on November 20, 2025. However, because both parties requested multiple extensions of briefing deadlines and the complexities of the issues involved in this appeal, we find good cause to extend the deadline. See Ill. Sup. Ct. R. 311(a)(5).

both "currently" resided in Texas. It also stated procedures for when each parent would take J.S. out of Texas, requiring notice and travel information to the other parent, and included a provision stating that "[w]hile the parties agree to reside within reasonable proximity of each other, neither parent shall permanently move [J.S.] from the State of Texas or a distance within Texas more than twenty-five (25) miles from [J.S.'s] current primary address…" without consent or a court order.

¶ 5    The parties agreed that the circuit court of Cook County had jurisdiction over the parties and the subject matter. The Allocation Judgment also provided that J.S.'s home state was Texas under the Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA"). It contained a provision that "[b]oth parties agree that the appropriate jurisdiction and venue for the litigation and resolution of issues related to the allocation of parental responsibilities and parenting time *** is the Circuit Court of Cook County." Finally, it stated that "[t]his Agreement shall be construed under the laws of the State of Illinois" and that "[t]he parties agree that the Circuit Court of the State of Illinois [*sic*] shall retain exclusive and continuing jurisdiction over this cause to enforce or modify" the Allocation Judgment.

¶ 6    The record shows that over the next year, very little happened in this case. The parties did not file any substantive pleadings or motions and the court entered no substantive orders, including no orders for temporary child support or maintenance.

¶ 7    Rather, approximately a year and a half after Michelle filed her counter-petition, on October 10, 2023, John filed a response, denying that he or Michelle were residents of Illinois, and stating that both parties have been residents of Texas since approximately March 21, 2022, prior to the filing of Michelle's counter-petition. The same day, again through counsel, John filed a motion to voluntarily dismiss his petition for dissolution of marriage under section 2-1009 of the

Code of Civil Procedure (735 ILCS 5/2-1009 (West 2024)). He also filed a motion to dismiss Michelle's counter-petition under sections 2-104 and 2-301 of the Code of Civil Procedure (735 ILCS 5/2-104, 2-301 (West 2024)), arguing that the parties and their child moved to Texas on March 21, 2022, and both parties were residents of Texas at the time Michelle filed the counter-petition. John argued that the petition should be dismissed because Illinois lacked personal jurisdiction over the parties as they lived in Texas. Alternatively, he argued that under the doctrine of *forum non conveniens*, Illinois was an inconvenient forum given that the parties and a sizable portion of their real property were located in Texas, and thus, the court should transfer the case to Travis County, Texas.

¶ 8      Michelle objected to both motions and argued that the court had personal jurisdiction over the parties when John filed this case and Michelle filed an appearance. She also argued that John is barred from objecting to personal jurisdiction because he filed the case in Cook County, judicially admitted in his petition that he and Michelle were residents of Illinois, filed a motion to set a case management conference and participated in a pretrial conference, signed a Marital Estate Jurisdiction Agreement ("Jurisdiction Agreement") agreeing to litigate financial issues in the divorce in Illinois, and accepted the benefits of the Allocation Judgment. She also argued that John waived any objection to venue.

¶ 9      Michelle asserted that she and John signed the Jurisdiction Agreement in August 2022, confirming that the circuit court of Cook County would resolve all financial matters between the parties. Michelle averred in her affidavit that she would not have signed the Allocation Judgment had John not signed the Jurisdiction Agreement because it was important to her that Illinois be the exclusive jurisdiction and venue to decide the remaining issues. Michelle attached a copy of the

Jurisdiction Agreement, which stated: "In exchange for the parties' execution of the Allocation Judgment *** as consideration hereto, *** the Parties, hereby bind, affirm and avail themselves to the exclusive jurisdiction of Cook County, Illinois, for the purpose of resolving all financial matters pertaining to their Dissolution of Marriage action." It further stated that "[t]he execution of this Agreement by the Parties shall act as a waiver of any right to object to jurisdiction of the abovementioned action in the Circuit Court of Cook County, Illinois."

¶ 10    The circuit court heard arguments on John's motions and invited additional briefing on several issues, including (1) whether either party met the statutory residency requirement in section 401(a) of the Act at the time of filing the petition and counter-petition; and (2) if neither party met that requirement, whether the circuit court of Cook County was deprived of subject matter jurisdiction over this case; (3) whether John judicially admitted residency in his petition; (4) whether such a judicial admission can eliminate residency as an evidentiary issue; (5) whether John can retract his judicial admission or whether the court was free to disregard it even if John is not entitled to retract it.[2]

¶ 11    John argued that the circuit court lacked subject matter jurisdiction over this case because both parties had been living in Texas since March 2022 and did not meet the residency requirements in section 401(a) of the Act. Section 401(a) provides in relevant part that "[t]he court shall enter a judgment of dissolution of marriage when at the time the action was commenced one of the spouses was a resident of this State … and the residence … had been maintained for 90 days next preceding the commencement of the action or the making of the finding…"   750 ILCS

---

[2] While John also raised the lack of personal jurisdiction in his motion to dismiss, he abandoned that argument in the circuit court, the court did not rule on it, and John does not pursue that argument on appeal.  Thus, we need not address it.

5/401(a) (West 2024). John also filed a motion for clarification or in the alternative, an extension of time in which to file his motion for *forum non conveniens*. Michelle argued that section 401(a) was not jurisdictional, but was merely a statutory requirement that the parties could, and did, waive.

¶ 12    Following a hearing, on October 22, 2024, the circuit court found that the issue of residency under section 401(a) was not a concrete fact, and that John's statements regarding Illinois residency were evidentiary, rather than judicial, admissions. The court then scheduled an evidentiary hearing on the issue of the parties' residency.

¶ 13    Michelle next filed a "Petition to Enforce Marital Estate Jurisdiction Agreement or to Apply the Doctrines of Waiver and Estoppel to Bar John from Contesting Residency." Michelle argued that, by signing the Jurisdiction Agreement, John waived any challenge to whether the parties met the residency requirement in section 401(a). Michelle sought a binding declaration that the Jurisdiction Agreement was valid and enforceable and that the dissolution action would proceed in Cook County.

¶ 14    The matter proceeded to a two-day evidentiary hearing on February 19 and 20, 2025, where John and Michelle testified. The evidence established that, during the parties' marriage, John, Michelle, and J.S. lived in Glenview, Illinois as their primary residence through March 2022. In 2020 and 2021, they purchased two residences in Leander, Texas, which they used as vacation homes.

¶ 15    The parties decided to end their relationship and seek a divorce on January 24, 2022. Shortly afterwards, the parties discussed the divorce with J.S. and the possibility of both parties moving to Texas so they could be close to each other. All three travelled to Texas in February

2022 to tour schools for J.S., and Michelle placed a deposit for a new school after the visit. Michelle also kept a deposit at J.S.'s school in Illinois for the 2022-2023 school year, but J.S. did not return to that school.

¶ 16    John, Michelle, and J.S. all moved to Texas on March 21, 2022, with John living in one of the parties' Texas residences and Michelle and J.S. living in the other. J.S. began attending school in Texas in late March 2022 and has continuously attended Texas schools since then. Michelle and J.S. returned to Illinois a few times in April and May of 2022 for medical appointments for J.S., but the parties ultimately found new physicians in Texas.

¶ 17    John testified that he had not been back to Illinois between March 2022 and the start of the evidentiary hearing, and that he considered their move to Texas to be permanent. He filed his petition for dissolution in Illinois because he thought that owning the Glenview home was sufficient to meet the residency requirement and because he thought that, since they had not lived in Texas for six months, Illinois had jurisdiction over child custody issues. He testified that his assertion in his petition that he and Michelle were Illinois residents was "an honest mistake."

¶ 18    Michelle testified that John moved to Texas and she agreed to move to Texas "temporarily as an extended stay to see how it goes," but did not intend that stay to be permanent until at least August 2022.  In May 2022, she paid a deposit for J.S.'s school in Illinois for the 2022-2023 school year because she planned to send him to that school. She flew back to Illinois on a regular basis for medical appointments for J.S. in 2022, and testified that she still viewed the parties' Glenview residence as "home." Michelle agreed that, at the time of the hearing in February 2025, she considered herself a Texas resident. Michelle acknowledged that the Allocation Judgment stated that the parties were required to live near each other in Texas, but testified that if the Allocation

Judgment had not been entered, she would have moved back to Illinois with J.S. She stated that she continued to maintain an active Illinois real estate license and driver's license and had not changed her voter registration from Illinois.

¶ 19    The parties also introduced evidence regarding the Jurisdiction Agreement. John testified that he was first shown that agreement on August 18, 2022, a day after he signed the Allocation Judgment. He testified that his understanding was that entering the Allocation Judgment was contingent upon him signing the Jurisdiction Agreement. He stated that he felt like he had no choice but to sign the Jurisdiction Agreement so the Allocation Judgment would be entered, which he believed would be in J.S.'s best interest. John feared that if the Allocation Judgment were not entered, Michelle would have taken J.S. back to Illinois. John testified that he did not intend to be bound by the Jurisdiction Agreement and did not believe it was enforceable.

¶ 20    John testified that he signed the Jurisdiction Agreement under duress, but did not sign the Allocation Judgment under duress.  With respect to the Allocation Judgment, he signed what he believed was best for his child.  He was worried that Michelle would interfere with his relationship with his son without the Allocation Judgment. John also stated that he felt like he was "blackmailed" into signing the Jurisdiction Agreement. The parties stipulated that John's attorneys communicated with John about the Allocation Judgment and how that was affected by the Jurisdictional Agreement. Michelle denied threatening John with any consequences if he refused to sign the Jurisdiction Agreement, but stated that it was important for her that the financial portion of the parties' divorce was resolved in Illinois and that she would not have stayed in Texas if the Jurisdictional Agreement had not been signed.

¶ 21 In a written order, the circuit court granted John's motion for voluntary dismissal of his petition for dissolution, granted in part John's motion to dismiss Michelle's counter-petition, denied Michelle's motion to enforce the Jurisdiction Agreement and denied John's motion for clarification. The court found John's testimony to be credible that the March 2022 move to Texas was to be permanent, at least for him and J.S. The court made several factual findings about Michelle's testimony and her intentions and held that John defeated the presumption that Michelle was an Illinois resident. The court found that neither John nor Michelle were residents of Illinois, as both moved to Texas and abandoned Illinois residency in March 2022.

¶ 22 The court held that the residency requirement in section 401(a) of the Act was not optional or waivable and that the court's subject matter jurisdiction was limited by that residency requirement. Because neither John nor Michelle was an Illinois resident, the court held that it lacked jurisdiction over the case and dismissed the petitions. The court found that the Jurisdiction Agreement was not enforceable because it could not confer jurisdiction upon the court where it otherwise did not exist and the parties could not agree to resolve the divorce proceedings in Illinois. The court further found that "even if the [Jurisdiction Agreement] could be found controlling," John signed it "under duress making it unenforceable," finding John's testimony to be credible. Given its rulings on the other issues, the circuit court declined to address John's *forum non conveniens* argument. Michelle appealed.

¶ 23 First, Michelle argues that the circuit court should have found that John judicially admitted Michelle's Illinois residency in his verified petition for dissolution. She argues that this admission satisfied the residency requirement in section 401(a) of the Act and removed the issue from

controversy, and that circuit court therefore erred by reaching the issue of subject matter jurisdiction.

¶ 24 Section 401(a) of the Act states, in relevant part, that a "court shall enter a judgment of dissolution of marriage when at the time the action was commenced one of the spouses was a resident of this State ***, and the residence *** had been maintained for 90 days next preceding the commencement of the action or the making of the finding..." 750 ILCS 5/401(a) (West 2024). In his verified petition, John alleged Michelle "is a resident of Illinois."

¶ 25 A judicial admission is a "deliberate, clear, unequivocal statement[] by a party about a concrete fact within that party's knowledge." *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998). It has the effect of "withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 557-58 (2005). A judicial admission differs from an evidentiary admission, which "may be contradicted or explained." *Rennick*, 181 Ill. 2d at 406. Admissions in a verified pleading remain part of the record and "any admissions not the product of mistake or inadvertence become binding judicial admissions." *Rynn v. Owens*, 181 Ill. App. 3d 232, 235 (1989). We may affirm the circuit court's judgment on any ground in the record, "regardless of whether the lower court relied on those grounds." *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995).

¶ 26 We need not determine if John's allegation in his verified petition could be a judicial admission as to Michelle's residency (under either an abuse of discretion or *de novo* standard of review, see *Crittenden v. Cook County Comm'n on Human Rights*, 2012 IL App (1st) 112437, ¶¶ 46-47 (discussing split of authority on the appropriate standard of review)) because, even if it was, that allegation does not satisfy the residency requirement of section 401(a) of the Act, and

therefore, did not withdraw a fact from issue. John's allegation stated merely that Michelle "is a resident of Illinois." This did not establish that the parties met the residency requirement of section 401(a) because it does not allege that either of the parties had maintained residence in Illinois for the requisite time period. 750 ILCS 5/401(a) (West 2024). Since any admission in John's petition as to Michelle's residency did not remove the issue of whether the parties met the residency requirement in section 401(a) from controversy, we find that the circuit court did not err in holding an evidentiary hearing to resolve this issue. See *Porter v. City of Chicago*, 393 Ill. App. 3d 855, 864 (2009) ("Whether evidence should be admitted on a conceded fact is subject to the trial judge's discretion.") (citing *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 462-63 (1992)).

¶ 27 Next, we address the circuit court's order granting John's motion to dismiss Michelle's counter-petition, finding that it lacked subject matter jurisdiction over the case because the parties failed to satisfy the residency requirements of section 401(a) of the Act.

¶ 28 As set forth above, section 401(a) provides in relevant part that "[t]he court shall enter a judgment of dissolution of marriage when at the time the action was commenced one of the spouses was a resident of this State … and the residence … had been maintained for 90 days next preceding the commencement of the action or the making of the finding" regarding irreconcilable differences. 750 ILCS 5/401(a) (West 2024). Section 403(a) specifically refers to the requirements of section 401(a) as "jurisdictional" and provides in relevant part: "The complaint or petition for dissolution of marriage … shall minimally set forth: (1) the age, occupation and residence of each party and his length of residence in this State; … (3) that the jurisdictional requirements of subsection (a) of Section 401 have been met ...." 750 ILCS 5/403(a) (West 2024).

¶ 29    The interpretation of section 401(a) is an issue of law that we review *de novo*. *Miller v. Department of Agriculture*, 2024 IL 128508, ¶ 30. Similarly, the determination of whether the circuit court had subject matter jurisdiction over a claim is a question of law we review *de novo*. *McCormick v. Robertson*, 2015 IL 118230, ¶ 18.

¶ 30    In *McFarlin v. McFarlin*, 384 Ill. 428 (1943), the Illinois Supreme Court addressed the "jurisdiction of the court" in a divorce action.  Although the provision of the Act at issue in that case involved venue, the court specifically addressed the court's subject matter jurisdiction and the residency requirement in the Act, holding that "[c]ourts of equity have no inherent power in cases of divorce.  The jurisdiction of such courts to hear and determine divorce matters is conferred only by statute. While such courts may exercise their powers within the limits of the jurisdiction conferred by the statute, the jurisdiction depends upon the grant of the statute and not upon general equity powers." *Id.* at 430-31 (citing *Johnson v. Johnson*, 381 Ill. 362 (1942); *Smith v. Smith*, 334 Ill. 370, 379-80 (1929)).  The court referenced section 2 of the Act, a precursor to section 401(a), which made the residence of the plaintiff in Illinois for a specified period before the filing of the complaint a "jurisdictional prerequisite."  *Id.* at 430-31.

¶ 31    The *McFarlin* court explained that "[i]ts effect is to withhold from a court the power to hear and determine divorce matters unless the factual situation in reference to plaintiff's residence brings the case within the statute." *Id.* at 432. See also *People ex rel. Christiansen v. Connell*, 2 Ill. 2d 332, 341 (1954) ("The jurisdiction of such courts to hear and determine divorce matters is conferred only by statute.") (quoting *McFarlin*, 384 Ill. at 430); *Strukoff v. Strukoff*, 76 Ill. 2d 53, 60 (1979) (relying on *McFarlin* and holding "dissolution of marriage is entirely statutory in origin and nature," the jurisdiction of Illinois courts to hear divorce matters is conferred "only by statute,"

and that the court's jurisdiction "depends upon the grant of the statute and not upon general equity powers."); *In re Marriage of Henry*, 156 Ill. 2d 541, 544 (1993) ("Dissolution of marriage and collateral matters such as child support are entirely statutory in origin and nature…").

¶ 32 This court has repeatedly followed this holding. *See In re Marriage of Passiales*, 144 Ill. App. 3d 629, 634 (1986) ("The plaintiff's residence in a divorce case is necessary to confer subject matter jurisdiction on the court."). *See also Davis v. Davis*, 9 Ill. App. 3d 922, 929 (1973); *Farah v. Farah*, 25 Ill. App. 3d 481, 487 (1975); *In re Marriage of Gryka*, 90 Ill. App. 3d 443, 445-46 (1980); *Skilling v. Skilling*, 104 Ill. App. 3d 213, 219 (1982); *In re Marriage of Epting*, 2012 IL App (1st) 113727, ¶ 28; *In re Marriage of Robinson*, 225 Ill. App. 3d 1037, 1038 (1992) ("Where a trial court is hearing matters relating to the dissolution of a marriage, it is not acting within the unlimited jurisdiction conferred on it by the constitution but, rather, is limited to that granted in the" Act); *In re Marriage of Burkhart*, 267 Ill. App. 3d 761, 764 (1994) ("A court must act within the statutory authority granted to it in a dissolution of marriage action; it may not rely upon its general equity powers."); *In re Marriage of Rhodes*, 326 Ill. App. 3d 386, 388 (2001) ("The authority of a circuit court to act in dissolution of marriage cases is conferred only by statute.").

¶ 33 Michelle cites recent Illinois Supreme Court cases based on the Illinois Constitution of 1970 which hold that "[w]ith the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." *McCormick*, 2015 IL 118230, ¶ 19 (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d. 325, 334 (2002)). "Under section 9 of article VI of the Illinois Constitution, the jurisdiction of circuit courts extends to all 'justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of

the General Assembly and to the ability of the Governor to serve or resume office.'" *Id.* ¶ 20 (quoting Ill. Const. 1970, art. VI, § 9).

¶ 34    "[W]hile the General Assembly may create new justiciable matters through legislation that create rights that have no counterpart in common law or at equity, our court has made clear that the establishment of a new justiciable matter neither extends nor constrains the court's jurisdiction." *Id.* ¶ 23. Thus, as long as a matter brought before the circuit court is justiciable and does not fall within the original and exclusive jurisdiction of the Illinois Supreme Court, the circuit court has subject matter jurisdiction to consider it. *Id.* ¶ 20. *See also In re M.W.*, 232 Ill. 2d 408, 417-426 (2009).  While interpreting a provision of the UCCJEA, the *McCormick* court held that, except in these rare situations, "the fact that the litigants or the court may have deviated from requirements established by the legislature does not operate to divest the court of jurisdiction." *McCormick*, 2015 IL 118230, ¶ 22.

¶ 35    Michelle argues that *McFarlin* and its progeny are based on the prior Illinois Constitution and a view of subject matter jurisdiction which has since been rejected by *Belleville Toyota* and *McCormick*.  Michelle urges us to essentially overrule these cases, including *McFarlin*, because they are "simply no longer good law." However, this court has no authority to overrule a decision of the Illinois Supreme Court or declare that a supreme court decision is no longer controlling authority. *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 28.  Rather, "'[w]here the Supreme Court has declared the law on any point, *it alone can overrule and modify its previous opinion*, and the lower judicial tribunals are bound by such decision and it is the duty of such lower tribunals to follow such decision in similar cases.'" *Id.* (quoting *Price v. Philip Morris, Inc.*, 2015 IL 117687, ¶ 38). None of the recent supreme court cases cited by Michelle involve the sole issue presented here,

whether the residency requirements of section 401(a) of the Act are jurisdictional, and none of them overrule *McFarlin*, *Strukoff* or *Henry*.[3] Thus, while we question the continued viability of *McFarlin*, *Strukoff* and *Henry* and their progeny in light of *Belleville Toyota*, *McCormick*, and *M.W.*, we are bound to follow them, particularly where the supreme court decided *Strukoff* and *Henry* after the enactment of the Illinois Constitution of 1970. *See Blumenthal*, 2016 IL 118781, ¶ 28. Accordingly, because we are bound by *McFarlin*, we agree with the circuit court that compliance with the residency requirements in sections 401(a) and 403 of the Act are necessary to confer subject matter jurisdiction on the circuit court.

¶ 36    As this issue is a matter of subject matter jurisdiction, it cannot be waived either by consent of the parties or by contract. *Belleville Toyota*, 199 Ill. 2d at 333 (citing *Currie v. Lao*, 148 Ill. 2d 151, 157 (1992)) ("The issue of subject matter jurisdiction cannot be waived."). Accordingly, the circuit court did not err by declining to enforce the Jurisdictional Agreement on this ground.

¶ 37    Although Michelle argues that requirements under the Act can be waived, she does not cite any case where a court allowed the parties to waive the residency requirements in section 401(a). First, Michelle cites *In re Marriage of Cohn*, 93 Ill. 2d 190 (1982), but that case reaffirms *McFarlin*'s and *Strukoff*'s holding that "dissolution of marriage is entirely statutory in origin and nature, and that the court's authority is limited thereby." Additionally, *Cohn* discussed a different provision of the Act and addressed waiver as a failure to timely object to the trial court's error and not the parties' waiver of any requirements of the Act, as Michelle asks this Court to find in this

---

[3] Although *In re Marriage of Tronsrue*, 2025 IL 130596, ¶ 34, provides "when the 1992 judgment of dissolution of marriage was entered, the circuit court possessed subject-matter jurisdiction because the circuit court had the power to hear and determine cases filed pursuant to the Marriage Act and divorce proceedings are justiciable matters," the court did not address the specific residency requirements of section 401(a) applicable in this case nor did it expressly overrule *McFarlin*. Thus, *McFarlin* still controls here.

case. *In re Marriage of Mitchell*, 181 Ill. 2d 169 (1998), is similarly distinguishable where the court addressed a different provision in the Act involving child support orders and not the residency requirements of section 401. Thus, we find these cases distinguishable.

¶ 38   Based on our ruling on this issue, we need not address the circuit court's alternative holding that John signed the Jurisdiction Agreement under duress.

¶ 39   Next, Michelle does not challenge the circuit court's finding that John was a Texas resident as of March 2022, but argues that the court's finding that she abandoned her Illinois residence and became a Texas resident in March 2022 was against the manifest weight of the evidence. We disagree. To establish residency, physical presence and an intent to remain in that place as a permanent home are required. *Maksym v. Board of Election Com'rs of City of Chicago*, 242 Ill. 2d 303, 319 (2011). Once residency is established, the test is not physical presence but abandonment. *Id.* The residency is presumed to continue and the burden is on the contesting party to show that the residency was abandoned. *Id.* Both the establishment and abandonment of a residence is principally a question of intent which is determined from the person's actions. *Id.* A witness is competent to testify about their intent to abandon their residence, but "such testimony is not necessarily conclusive." *Id.*

¶ 40   The circuit court's finding of residency in a divorce case is reversed only if it is against the manifest weight of the evidence. *Epting*, 2012 IL App (1st) 113727, ¶ 23 (citing *Rosenshine v. Rosenshine*, 60 Ill. App. 3d 514, 517 (1978)). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Best v. Best*, 223 Ill. 2d 342, 350 (2006) (citing *In re D.F.*, 201 Ill. 2d 476, 498 (2002)).

¶ 41    Here, the circuit court found that John defeated the presumption that Michelle was a resident of Illinois and that Michelle abandoned her Illinois residency as of March 2022. Michelle acknowledges that the circuit court found the evidence as to her intent to abandon her Illinois residency was "mixed," and the circuit court's finding that she had abandoned such residency by March 2022 was necessarily based on its assessment of the parties' testimony and credibility. The circuit court heard witness testimony, resolved conflicts of fact and assessed the credibility of both Michelle and John in making this determination. In a close case like this, "where findings of fact depend on the credibility of witnesses, it is particularly true that a reviewing court will defer to the findings of the trial court unless they are against the manifest weight of the evidence." *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002).

¶ 42    While Michelle maintained that her move to Texas was temporary, there was sufficient evidence supporting the court's finding that Michelle's move to Texas in March 2022 was permanent, including that she moved into one of the parties' Texas homes with J.S. and only returned to Illinois for medical appointments and vacations, J.S. transferred to a school in Texas toward the end of the school year, and J.S. obtained new medical providers in Texas shortly after the move. The court also cited Michelle's communications which established her intent to move permanently and relied on the parties' Allocation Judgment itself wherein they acknowledged that they resided in Texas and that neither party could permanently remove the child from Texas. As there was sufficient evidence to support the circuit court's conclusion that Michelle abandoned her Illinois residency and was a resident of Texas in March 2022, before the cross-petitions for dissolution were filed, its finding was not against the manifest weight of the evidence.

¶ 43    Thus, because both John and Michelle were residents of Texas and not residents of Illinois during the residency time periods set forth in section 401(a) of the Act, the circuit court correctly found that they did not meet the residency requirements of that section and dismissed Michelle's counter-petition for lack of subject matter jurisdiction.

¶ 44    Lastly, we address John's motion to voluntarily dismiss his petition for dissolution pursuant to section 2-1009(a) of the Code of Civil Procedure. 735 ILCS 5/2-1009(a) (West 2024). Section 2-1009(a) states in relevant part:

> "The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause."

*Id.* This "confers on plaintiffs an unfettered right to voluntarily dismiss their claims without prejudice, upon proper notice and payment of costs, 'at any time before trial or hearing begins.'" *Morrison v. Wagner*, 191 Ill. 2d 162, 165 (2000) (quoting 735 ILCS 5/2-1009(a) (West 2024)). The only exceptions are that the circuit court retains discretion to decide a previously-filed defense motion that could result in a final disposition of the case if ruled upon favorably and when the circumstances are such that dismissal under section 2-1009 would directly conflict with a specific supreme court rule, in which case, the rule take precedence. *Morrison*, 191 Ill. 2d at 165.

¶ 45    On appeal, Michelle does not make any argument directed at the portion of the circuit court's order granting John's motion to voluntarily dismiss his petition. Therefore, she has forfeited any claim of error. See Ill. Sup. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited[.]"). Forfeiture aside, we affirm. *See Leonardi*, 168 Ill. 2d at 97 (we may affirm the circuit court's judgment on any ground in the record, "regardless of whether the lower court relied on those grounds."). Section 2-1009(a) allowed John to voluntarily dismiss his petition since no

trial or hearing had begun at the time he filed his motion and neither exception applies. Also, in the June 2025 hearing before the circuit court, John's counsel confirmed that John would pay costs to Michelle, as required by section 2-1009, pending confirmation of the amount. Therefore, John satisfied the requirements of section 2-1009 and we affirm the portion of the circuit court's order granting John's motion to voluntarily dismiss his petition without prejudice, subject to the payment of costs. See 735 ILCS 5/2-1009(a) (West 2024).

¶ 46 We reiterate that *McFarlin* requires us to hold that compliance with section 401(a) of the Act is necessary to confer subject matter jurisdiction on the court. With this ruling, however, we do not condone the parties' actions of filing this case in Illinois knowing that both the parties and their minor child had moved to Texas before the case was even filed or waiting more than a year and a half before raising the residency issue with the circuit court. Rather, we note that it is important to address any issues with the pleadings and residency requirement at the earliest stage of the case, before the court enters substantive orders involving the parties and/or children. Here, John did not file a response to Michelle's counter-petition where he denied their Illinois residency until a year and a half after it was filed, despite the requirement that an answer to Michelle's counter-petition was due within 21 days, thus, unreasonably delaying resolution of this issue. See Ill. Sup. Ct. R. 182(b) (eff. Jan. 1, 1967) ("Answers to and motions directed at counterclaims shall be filed by parties already before the court within 21 days after the last day allowed for the filing of the counterclaim.").

¶ 47 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 48 Affirmed.